UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HANIF S. ABDULLAH,

Plaintiff,

v.

DACUYCUY, et al.,

Defendants.

No. 2:19-cv-0804 TLN DB P

FINDINGS AND RECOMMENDATIONS

Plaintiff Hanif S. Abdullah, a former state prisoner, proceeds through counsel with a civil rights action under 42 U.S.C. § 1983. Defendants' motion for summary judgment is before the court. (ECF No. 52.) This matter was previously taken under submission pursuant to Local Rule 230(g). For the following reasons, the undersigned recommends the motion be granted as to plaintiff's claims against defendant Mutopo and denied as to plaintiff's claims against defendants Hortizuela and Dacuycuy.

**I. BACKGROUND**

Proceeding pro se, plaintiff filed the operative first amended complaint on April 26, 2021. (ECF No. 25.) On June 11, 2021, the court screened the amended complaint pursuant to 28 U.S.C. § 1915A and found it stated cognizable claims under the Eighth Amendment against defendants Dacuycuy, Mutopo, and Hortizuela. (ECF No. 26.)

On July 22, 2022, defendants filed the motion for summary judgment presently before the court. (ECF No. 52.) The motion is fully briefed with plaintiff's opposition and the defendants' reply. (ECF Nos. 56, 57.) For the following reasons, the undersigned recommends the motion be granted in part and denied in part.

**II. LEGAL STANDARD**

Summary judgment is appropriate when the moving party shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to obtain summary judgment, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its

pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

**III. RELEVANT FACTS**

Plaintiff was discharged from Sonoma Valley Hospital ("SVH") on July 18, 2018, having had a right knee replacement surgery two days prior. (ECF No. 56-3, Statement of Undisputed

Facts ("SUF") 1.) Dr. Brown's discharge orders stated, "patient may shower with a waterproof bandage on." (Id.) Dr. Brown's discharge orders additionally stated, "Leave bandage on for two weeks and it may be removed." (Id.)

At all relevant times, defendants were employed by the California Department of Corrections and Rehabilitation, working as registered nurses at California Health Care Facility ("CHCF"). (ECF No. 56-3, SUF 47.)

When plaintiff returned to CHCF from SVH on July 18, 2018, defendant Mutopo completed plaintiff's admission assessment. (ECF No. 56-3, SUF 2.) Mutopo took plaintiff's vital signs and noted the dressing on the incision site was clean, dry, and intact. (Id.)

On July 19, 2018, plaintiff was seen by defendants Hortizuela and Mutopo, who noted plaintiff's dressing was clean, dry, and intact, with swelling at the surgical site. (ECF No. 56-3, SUF 3, 5.) CHCR physician, A. Dredar, noted plaintiff's knee showed moderate swelling with generalized mild tenderness, a large vertical incision scar, and that the dressing clean, dry, and intact. (Id., SUF 4.)

From July 19, 2018, to July 30, 2018, defendants provided post-operative care for plaintiff's knee, noting on each occasion that plaintiff's original dressing was clean, dry, and intact. (ECF No. 56-3, SUF 6-21.) According to plaintiff's sworn declaration, from July 19, 2018, to July 30, 2018, defendant Hortizuela used plastic garbage bags and tape to cover the original surgical dressing that Dr. Brown put on plaintiff's right knee before plaintiff showered.[1] (ECF No. 56-2, ¶¶ 4, 7-9, 11, 12, 15.)

According to plaintiff's sworn declaration, Dr. Son removed Dr. Brown's original surgical dressing on July 30, 2018. (ECF No. 56-3, SUF 22.) This was approximately two weeks after the date of Dr. Brown's discharge orders, which had stated "Leave bandage on for two weeks and it may be removed." (Id.) Plaintiff expressed concern about the pain he was having in his right knee

[1] Paragraph 4 of plaintiff's sworn declaration indicates that from July 19, 2018, to July 30, 2018, "Defendants" used plastic garbage bags and tape to cover the original surgical dressing that Dr. Brown had put on plaintiff's right knee before he showered. (ECF No. 56-2, ¶ 4.) However, plaintiff offers specific evidence for this claim only as to defendant Hortizuela. (See id., ¶¶ 7-9, 11, 12, 15.)

and that it was red in color; Dr. Son responded that this was part of the healing process. (Id.) According to plaintiff, one of the defendants put a new dressing on plaintiff's right knee after the visit with Dr. Son. (Id.)

Also on July 30, 2018, plaintiff was seen by CHCF physician Dr. Monivirin. (ECF No. 56-3, SUF 22.) According to the medical records, which are disputed in part by plaintiff, Dr. Monivirin assessed plaintiff's dressing as in place, no redness of skin, no discharge, and no leg swelling. (Id.) Under plaintiff's evidence, as set forth above, the original dressing had already been removed by Dr. Son. (Id.)

On July 31, 2018, defendant Dacuycuy provided post-operative care for plaintiff's knee. Under defendants' evidence, disputed in part by plaintiff, Dacuycuy noted plaintiff's dressing was clean, dry, and intact. (ECF No. 56-3, SUF 24.) According to plaintiff's sworn declaration, defendant Dacuycuy removed plaintiff's dressing prior to plaintiff taking a shower and photographed and measured the surgical incision on plaintiff's right knee. (Id.) Plaintiff expressed concern about pain in his right knee and that the surgical incision had dehisced (split open). (Id.) Dacuycuy told plaintiff to wash his right knee with soap and water to keep it clean. (Id.) After plaintiff finished showering, Dacuycuy put a new dressing on plaintiff's right knee. (Id.)

On August 1, 2018, defendant Hortizuela provided post-operative care for plaintiff's knee. Under defendants' evidence, Hortizuela noted plaintiff's dressing was clean, dry, and intact, with no exudate. (ECF No. 56-3, SUF 25.) According to plaintiff's sworn declaration, Hortizuela removed the dressing prior to plaintiff taking a shower and covered the right knee with a garbage bag and tape in a manner such that the garbage bag made contact with the dehisced surgical wound. (Id.) Hortizuela put a new dressing on plaintiff's right knee after plaintiff finished showering. (Id.)

Also on August 1, 2018, defendant Mutopo noted plaintiff's dressing was clean, dry, and intact, with no exudate. (ECF No. 56-3, SUF 26.) According to plaintiff, this was after the dressing was changed by defendant Hortizuela in the morning after plaintiff took his shower. (Id.)

On August 2, 2018, defendant Hortizuela provided post-operative care for plaintiff's knee. Under defendants' evidence, Hortizuela noted plaintiff's dressing was clean, dry, and intact, with

no exudate. (ECF No. 56-2, SUF 27.) According to plaintiff, he expressed concern about the pain he was having in his right knee and that the surgical incision had dehisced. (Id.) Hortizuela removed the dressing prior to plaintiff taking a shower and covered plaintiff's right knee with a garbage bag and tape for his shower, such that the garbage bag made contact with the dehisced surgical wound. (Id.) Hortizuela put a new dressing on plaintiff's right knee after plaintiff finished showering. (Id.)

On August 3, 2018, defendant Mutopo provided post-operative care for plaintiff's knee. (ECF No. 56-3, SUF 28.) According to plaintiff's sworn declaration, Mutopo removed the dressing, photographed and measured the surgical incision on plaintiff's right knee, and put a new dressing on plaintiff's right knee after photographing and measuring it. (Id.) Under plaintiff's evidence, he expressed concern to Mutopo about the pain he was having in his right knee and that the surgical incision had dehisced. (Id.)

On August 4, August 5, August 6, August 7, and August 8, 2018, according to plaintiff's sworn declaration, plaintiff received post-operative knee care from defendants Hortizuela and Dacuycuy which is not reflected in the medical records. (ECF No. 56-3, SUF 38.) Specifically, on August 4, August 5, and August 8, plaintiff expressed concern to defendant Hortizuela that the surgical incision had dehisced, that there was yellow drainage and blood on the dressings, and that he was experiencing increased pain in his right knee. (Id.; see also ECF No. 56-2, ¶¶ 11-15.) On August 6 and August 7, plaintiff expressed the same concerns to defendant Dacuycuy. (Id.) Plaintiff's medical records contain do not contain records of these interactions.

According to plaintiff's sworn declaration, on August 3, August 4, August 5, and August 8, 2018, defendant Hortizuela removed the dressing on plaintiff's right knee before he took a shower and covered his right knee with a plastic garbage bag and tape in such a manner that the garbage bag made contact with the dehisced surgical wound. (ECF No. 56-2, ¶¶ 7-9, 11, 12, 15.) After plaintiff finished showering, Hortizuela put a new dressing on his right knee. (Id.)

On August 8, 2018, CHCR physician Dr. Dredar saw plaintiff. (ECF No. 56-2, SUF 29.) Under defendant's evidence, which is disputed by plaintiff, Dr. Dredar noted plaintiff's incision was healing well and approved removal of the original dressing. (Id.) Dr. Dredar noted plaintiff

denied any drainage or redness and said he was feeling well with no concerns. (Id.) Dr. Dredar noted the dressing looked clean and no yellow drainage on the dressing. (Id.) According to plaintiff's sworn declaration, in contrast, plaintiff expressed concern to Dr. Dredar about (1) the increased pain he was having in his right knee, (2) the yellow drainage and blood on the dressing before it had been changed in the morning by defendant Hortizuela, and (3) the surgical incision having dehisced. (Id.)

On August 9, August 10, and August 11, 2018, according to plaintiff's sworn declaration, plaintiff received post-operative knee care from defendant Hortizuela not reflected in the medical records. (ECF No. 56-3, SUF 38; see also ECF No. 56-2, ¶¶ 17-19.) On each of these occasions, plaintiff expressed concern to Hortizuela about (1) the increased pain he was having in his right knee, (2) the yellow drainage and blood on the dressing, and (3) that the surgical incision had dehisced. (ECF No. 56-2, ¶¶ 17-19.) On August 10, 2018, according to plaintiff, Hortizuela photographed and measured the surgical incision on his right knee. (ECF No. 56-2, ¶ 18.) No medical records exist of the August 9, August 10, or August 11, 2018 interactions between plaintiff and defendant Hortizuela.

On August 11, 2018, plaintiff was seen by defendant Mutopo, who noted plaintiff's surgical incision site had dehisced at the upper part and had serosanguinous drainage. (ECF No. 56-3, SUF 30.) Mutopo sent a message to Dr. Dredar noting the conditions and indicating that nursing had been cleaning up the site and applying sterile dressing. (Id.)

On August 12, 2018, plaintiff was seen by nurse S. Cuevas, who saw plaintiff and noted seosanguinous drainage at the incision site, skin warm to the touch, swelling, and slight dehiscence. (ECF No. 56-3, SUF 31.) Plaintiff reported increasing pain. (Id.) The incision was cleaned and a dressing was applied. (Id.)

Also on August 12, 2018, plaintiff reported knee pain and drainage to defendant Hortizuela. (ECF No. 56-3, SUF 32.) Hortizuela noted swelling and drainage, cleaned the site with sterile water, and applied a dressing. (Id.)

Also on August 12, 2018, plaintiff was seen by CHCF physician Dr. Atienza, who noted the right knee incision scar having dehiscence, not septic-looking, a yellowish stain on the gauze,

swelling, skin warm to the touch, and no effusion. (ECF No. 56-3, SUF 33.) With a treatment plan to rule out a post-operative wound infection, Dr. Atienza ordered an antibiotic, wound culture, blood culture, knee x-ray and other lab work. (Id.)

On August 13, 2018, defendant Dacuycuy and another nurse changed plaintiff's dressing. (ECF No. 56-3, SUF 35.) They noted the dehisced area of the incision site with yellowish tissue and yellowish drainage on the old dressing, no foul odor, skin warm to touch, swelling, but no redness. (Id.) They cleaned the wound with an antibiotic soap and covered it with a dry dressing. (Id.)

Also on August 13, 2018, plaintiff was seen via "telemed" video conferencing by Dr. Brown, the surgeon at SVH who had performed the knee replacement. (ECF No. 56-3, SUF 36.) Dr. Brown recommended that plaintiff be seen by his CHCF physician and for the physician to call him. (Id.) Dr. Brown expected that plaintiff would be transferred to SVH for further evaluation and treatment. (Id.) A consultation note indicates the dehiscence in the wound, opening, and drainage had been going on for a week in plaintiff's knee. (ECF No. 56-1 at 29, Consultation Note dated August 14, 2018.)

Also on August 13, 2018, plaintiff was seen by CHCF physician, Dr. Son. (ECF No. 56-3, SUF 37.) Dr. Son called Dr. Brown, and plaintiff was transferred to SVH due to fever, low blood pressure, tachycardia and dehiscence of his incision site with drainage. (Id.)

**IV. DISCUSSION**

Defendants move for summary judgment, arguing (1) they were not deliberately different to plaintiff's serious medical needs; (2) they are not liable for negligence; (3) there is no showing of causation; and (4) they are entitled to qualified immunity for the deliberate indifference claim. (ECF No. 52-1 at 2.)[2] Under the evidence and argument in defendants' motion, plaintiff's knee bandage was noted to be clean, dry, and intact each time they saw him, through the time that Dr. Dredar ordered that the hospital-applied bandage could be removed on August 8, 2018. (ECF No. 57 at 2.) According to defendants, they had no interactions with plaintiff from August 3, 2018,

[2] The court references the page numbers assigned by the CM/ECF system where different from the original pagination.

until August 11, 2018, when defendant Mutopo noted in plaintiff's medical records that the surgical incision had dehisced. (ECF No. 52-1 at 8.)

In opposition to the motion for summary judgment, plaintiff argues the use of plastic garbage bags to cover his surgical wound before he took a shower, instead of sterile medical grade bandages, likely caused or increased his risk of developing a post-surgical infection. (ECF No. 56 at 11.) Plaintiff argues defendants deliberately ignored his concerns about the pain, yellow drainage, blood, and that his surgical incision had dehisced when his right knee became infected. (Id.) Plaintiff argues defendants failed to maintain timely and accurate patient records, including digital images and measurements of his wound between August 3 and August 10, 2018. (Id. at 12.) Plaintiff argues defendants violated the standard of care for nurses at CHCF, and were deliberately indifferent, when they stopped taking medical notes, or, in the alternative, when they subsequently concealed the records. (Id. at 11.)

**A. Objections to Evidence**

**1. Plaintiff's Declaration**

Defendants argue plaintiff's declaration asserts matters not supported by, or contrary to, his medical records. (ECF No. 57 at 3.) Defendants contend the matters stated are also contrary to plaintiff's deposition testimony in which he did not describe all the matters presented in his declaration when asked to identify all interactions with defendants. (Id.) Defendants argue the court should disregard the matters stated in plaintiff's self-serving declaration where his account contradicts the medical records and his deposition testimony. (Id. at 3-4.)

The court may disregard a self-serving declaration or portion thereof if, for example, it is based only on speculation or conclusions. See Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Here, plaintiff's declaration contains factual statements based on his claimed personal knowledge about what he informed the defendants. Plaintiff's declaration is competent evidence of what he informed the defendants, and when. See Nigro v. Sears, Roebuck and Co., 784 F.3d 495, 497 (9th Cir. 2015) (district court may not disregard evidence at the summary judgment stage solely based on its self-serving nature).

////

**2. Defendant's Use of Expert Opinion**

Plaintiff argues the court should strike or disregard the defendants' use of expert opinion in the motion for summary judgment because defendants objected to production of expert reports in discovery as premature. (ECF No. 56 at 13.) Specifically, defendants objected that plaintiff's request prematurely sought expert discovery before the deadline for expert disclosures. (Id.; see also 56-1 at 67.)

The court has not issued an order setting a trial date or setting a date for the disclosure of expert witnesses. Unless the court orders otherwise, disclosures must be made 90 days before the date set for trial. Fed. R. Civ. P. 26(a)(2)(D)(i). Defendants had no obligation to obtain and produce the requested reports. See, e.g., PacifiCorp v. Nw. Pipeline GP, No. 3:10-CV-00099-PK, 2013 WL 12433263, at *5 (D. Or. Feb. 8, 2013) (denying motion to compel premature production of expert reports). Accordingly, there is no basis to strike or disregard defendants' use of expert opinion.

**B. Eighth Amendment Deliberate Indifference**

**1. Applicable Law**

The Eighth Amendment prohibits prison officials from "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). To prove that any defendant violated this Eighth Amendment right, plaintiff must show that (1) he had an objectively serious medical need, (2) defendant was deliberately indifferent to that need, and (3) defendant's purposeful act (or failure to act) was the actual and proximate cause of plaintiff's claimed injuries. See Farmer v. Brennan, 511 U.S. 825, 834 (1994); Lemire v. Cal. Dep't of Corr. & Rehab., 726 F.3d 1062, 1074 & 1081 (9th Cir. 2013); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff must be able to show that a defendant was subjectively aware of the risk of serious harm. Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004). Subjective awareness "may be shown by circumstantial evidence where the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm." Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003).

////

**2. Discussion**

It is undisputed that plaintiff had a serious medical issue during the relevant time under the first prong of Farmer, 511 U.S. at 825. The focus of the court's inquiry is whether there is triable issue of material fact that any defendant was deliberately indifferent. The court takes an individualized approach in determining whether any defendant's alleged conduct caused a constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).

In Jett, 439 F.3d 1091, the Ninth Circuit held that a failure to send an inmate back to the specialist for follow-up appointment constituted deliberate indifference. Citing Jett, plaintiff argues the defendants unconstitutionally delayed medically necessary and urgent care. (ECF No. 56 at 17-18.) Specifically, defendants "ignored plaintiff's concerns and complaints concerning the pain he was experiencing in his right knee, the yellow drainage and blood that was saturating his dressing, and his concern that the surgical incision had dehisced." (Id. at 18.)

**a. Defendant Dacuycuy**

Under plaintiff's evidence, he first expressed concern to defendant Dacuycuy that his surgical incision had dehisced on July 31, 2018. Plaintiff had further interactions with defendant Dacuycuy on August 6 and August 7, 2018, again informing Dacuycuy on both occasions he was concerned because the surgical incision wad dehisced.

A mere difference of opinion between plaintiff and a defendant does not, by itself, create a genuine issue of fact as to whether immediate treatment was required. Toguchi, 391 F.3d at 1058-60. However, the court draws all reasonable inferences supported by the evidence in favor of plaintiff, the non-moving party. T.W. Elec. Serv., Inc., 809 F.2d at 631. Plaintiff's consultation notes dated August 14, 2018 indicates dehiscence in the wound, opening, and drainage had been going on for a week in plaintiff's knee. Plaintiff's declaration is competent evidence that he expressed concern that his surgical wound was dehisced to defendant Dacuycuy on July 31, August 6, and August 7, 2018. Plaintiff also reported increasing pain and yellow drainage and blood on the dressings on August 6 and August 7. There are no medical records of these interactions.

////

The parties' factual disputes about the July 31, August 6, and August 7 encounters between defendant Dacuycuy and plaintiff prevent summary judgment. A reasonable jury crediting plaintiff's version of the events could find that Dacuycuy knew of the harm to plaintiff in delaying proper treatment for plaintiff's dehisced surgical wound and deliberately failed to consider plaintiff's complaints or acted intentionally to delay or deny access to necessary medical care, causing the harm suffered. Therefore, defendant Dacuycuy is not entitled to summary judgment. See Estelle, 429 U.S. at 104.

**b. Defendant Hortizuela**

Defendant Hortizuela is also not entitled to summary judgment. Under plaintiff's evidence, Hortizuela provided plaintiff post-operative care on multiple occasions between August 1 and August 12, 2018. On August 2, August 4, August 5, August 8, August 9, August 10, and August 11, plaintiff informed Hortizuela he was concerned about pain in his knee and that his surgical incision had dehisced. On August 4, August 5, August 8, August 9, August 10, and August 11, 2018, plaintiff also informed Hortizuela he was experiencing increasing pain and that there was yellow drainage and blood on the dressings. On August 3, 2018, and multiple subsequent occasions during this time, Hortizuela applied a garbage bag and tape to plaintiff's knee for his shower, such that the garbage bag made direct contact with the dehisced surgical wound. A reasonable jury crediting plaintiff's version of the events could find Hortizuela's alleged acts and omissions demonstrate deliberated indifference to a risk of harm of which Hortizuela was subjectively aware. See McGuckin v. Smith, 974 F.2d 1050, 1060-61 (noting a repeated failure to treat an inmate properly or a single, egregious failure may strongly suggest a defendant's actions were motivated by deliberate indifference).

**c. Defendant Mutopo**

The parties agree that defendant Mutopo assessed plaintiff's knee on August 1, August 3, and August 11, 2018. Plaintiff's medical records reflect these interactions.

On August 1, 2018, defendant Mutopo noted plaintiff's dressing was clean, dry, and intact, with no exudate. According to plaintiff, this was after the dressing was changed by defendant Hortizuela in the morning after plaintiff took his shower. (Id.) Plaintiff does not claim

to have informed defendant Mutopo of any pain, dehiscence, or other issues with his knee on August 1. On August 11, 2018, Mutopo noted the surgical incision had dehisced and sent a message to Dr. Dredar regarding the conditions. Plaintiff was seen by a doctor the next day, on August 12, 2018. There is nothing about the August 1 or August 12 interactions from which the court could infer that Mutopo chose a course of treatment that "medically unacceptable under the circumstances" and which was chosen in "conscious disregard of an excessive risk to [plaintiff's] health." Toguchi, 391 F.3d at 1058 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

Under plaintiff's evidence, he also informed defendant Mutopo he was concerned about pain in his knee and that his surgical incision had dehisced on August 3, 2018. The record of the August 3 encounter does not reflect this concern. Under plaintiff's evidence, this interaction took place three days after plaintiff expressed concern expressed concern for the first time that the wound had dehisced, and about 11 days prior to the date of a consultation note indicating dehiscence in the wound, opening, and drainage had been going on for a week in plaintiff's knee. Under plaintiff's evidence, Mutopo photographed and measured the wound on August 3, 2018, but the photographs were not later found in the medical records.[3]

In light of plaintiff's declaration, the court will not assume that no sign of dehiscence was present on August 3, 2018. However, plaintiff does not claim he notified Mutopo of yellow drainage or blood, or that there were any other circumstances present making it sufficiently obvious that he needed medical care for his surgical wound that was not provided. Plaintiff's evidence pertaining to the August 3, 2018, encounter falls short of plausibly suggesting Mutopo deliberately chose a course of treatment that was medically unacceptable under the circumstances and that the choice was made in conscious disregard of an excessive risk to plaintiff's health. See Toguchi, 391 F.3d at 1058. Instead, plaintiff's evidence plausibly supports a conclusion that Mutopo might have provided, at most, negligent care on August 3, which does not support a claim under the Eighth Amendment. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.

[3] Neither were the photographs allegedly taken by defendant Dacuycuy on July, 31, 2018, or by defendant Hortizuela on August 10, 2018, found in plaintiff's medical records.

1990) (mere malpractice, or even gross negligence, does not rise to the level of a constitutional violation). Summary judgment on the Eighth Amendment claim should be entered in defendant Mutopo's favor.

**C. Qualified Immunity**

Defendants argue they are entitled to qualified immunity because the actions they took were not clearly unconstitutional. (ECF No. 52-1 at 21.) They argue no judicial case decision clearly establishes that the Eighth Amendment is violated when a medical professional acts as defendants did in caring for plaintiff under the events that are the subject of this action. (Id.)

Qualified immunity applies when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018); White v. Pauly, 137 S. Ct. 548, 551 (2017). "Clearly established" means the statutory or constitutional question was "beyond debate" such that every reasonable official would understand that what he is doing is unlawful. See Wesby, 138 S. Ct. at 589; Vos v. City of Newport Beach, 892 F.3d 1024, 1035 (9th Cir. 2018). Whether a constitutional right was violated is generally a question of fact for the jury, but whether a right was clearly established is a question of law for the court. Morales v. Fry, 873 F.3d 817, 823 (9th Cir. 2017).

To be "clearly established," a rule must be dictated by controlling authority or a robust consensus of cases of persuasive authority. Wesby, 138 S. Ct. at 577; Vos, 892 F.3d at 1035; see also Perez v. City of Roseville, 882 F.3d 843, 856-57 (9th Cir. 2018) (Ninth Circuit precedent is sufficient to meet the "clearly established" prong of qualified immunity). A case "directly on point" is not required. Wesby, 138 S. Ct. at 577; Vos, 892 F.3d at 1035. Nonetheless, courts must define the law with a "high degree of specificity" when applying qualified immunity. Wesby, 138 S. Ct. at 590. The key question is "whether the violative nature of particular conduct is clearly established" in the specific context of the case. Vos, 892 F.3d at 1035.

Defendants' qualified immunity arguments are unavailing in light of the disputed issues of material fact as to whether defendants Hortizuela and Dacuycuy violated plaintiff's rights under the Eighth Amendment. These disputed issues of fact preclude granting summary judgment on an

assertion of qualified immunity. Tennison v. City and Cnty. of S.F., 570 F.3d 1078, 1095 (9th Cir. 2009). Defendants' argument for qualified immunity relies on their own version of the facts, some of which are both material and disputed by plaintiff. The court cannot at this time conclude as a matter of law that defendants are entitled to qualified immunity. See Wilkins v. City of Oakland, 350 F.3d 949, 956 (9th Cir. 2003) ("[w]here the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate").

At the relevant time, it was clearly established that prisoners have a right to medical care. Estelle, 429 U.S. at 104-05. The law prohibiting an intentional denial or delay in medical treatment was also clearly established. Id.; Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) (by 1995 it was "clearly established that the officers could not intentionally deny or delay access to medical care"). Drawing all reasonable inferences in favor of the non-movant, as the court is required to do at this stage, T.W. Elec. Serv., Inc., 809 F.2d at 631, defendants Hortizuela and Dacuycuy have not established as a matter of law that they did not violate clearly established law.

**D. State Law Claims**

**1. Negligence and the Standard of Care**

Under California law, to succeed on a medical malpractice claim, a plaintiff must establish: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." Hanson v. Grode, 76 Cal.App.4th 601, 606 (1999) (quoting Budd v. Nixen, 6 Cal.3d 195, 200 (1971)). "The standard of care in a medical malpractice case requires that medical service providers exercise that degree of skill, knowledge and care ordinarily possessed and exercised by members of their profession under similar circumstances." Barris v. County of Los Angeles, 20 Cal.4th 101, 108 n. 1 (1999).

Except where the type of conduct required by the particular circumstances is within the common knowledge of laymen, the standard of care can only be proven by expert testimony. Hutchinson v. U.S., 838 F.2d 390, 392 (9th Cir. 1988). Thus, "[w]hen a defendant moves for

summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence." Id.

Here, defendants' expert reviewed plaintiff's medical records and opined that defendants Dacuycuy, Hortizuela, and Mutopo acted within the nursing standards of care in their care of plaintiff from July 18, 2018, through August 13, 2018. (ECF No. 52-6, ¶ 45.) However, defendants' expert bases the relevant opinions on defendants' construction of the facts which has been disputed by plaintiff. Specifically, defendants' expert opinion does not consider plaintiff's evidence that he received daily post-operative surgical care from defendants Hortizuela and Dacuycuy between August 3, 2018, and August 10, 2108, informing the defendant providing care each time that he was concerned that his surgical wound had dehisced, and informing them of increasing pain, yellow drainage and blood on the dressing. These material disputes of fact are capable of resolution through lay testimony. See Washington v. Yaplee, No. 1:20-CV-01356-EPG-PC, 2022 WL 7690478, at *9 (E.D. Cal. Oct. 13, 2022) ("[T]he relevant dispute is one of fact that can be resolved with lay testimony—i.e., whether Plaintiff had an infection that Defendant in fact recognized—rather than with expert testimony."). On the present record, plaintiff's negligence claims against defendants Dacuycuy and Hortizuela do not fail as a matter of law for lack of expert testimony regarding the standard of care.

As to defendant Mutopo, the material disputes of fact are not capable of resolution through lay testimony. Unless the situation is one in which common knowledge affords a basis for finding negligence, medical malpractice cases require expert testimony to establish the standard of care. See Hutchinson, 838 F.2d at 392. Plaintiff has not submitted expert testimony establishing the standard of care for defendant Mutopo's interactions with plaintiff. To the extent plaintiff had the burden to show Mutopo's treatment decision was "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment," Youngberg v. Romeo, 457 U.S. 307, 321–23 (1982), he has not met that burden. Accordingly, defendant Mutopo is entitled to summary judgment as to plaintiff's negligence claim.

**2. California Government Code § 845.6**

Defendants argue they are immune from liability for any negligent failure to furnish or obtain medical care for plaintiff under California Government Code Section 845.6.[4] (ECF No. 52-1 at 17.) That section provides:

> Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Sections 855.8 and 856, a public employee… is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care. Nothing in this section exonerates a public employee who is lawfully engaged in the practice of one of the healing arts under any law of this state from liability for injury proximately caused by malpractice….

Cal. Gov't. Code § 845.6.

Defendants argue they were already furnishing plaintiff medical care and therefore cannot be liable for failing to summon care. (ECF No. 57 at 7.) However, defendants provide no authority or further argument to support their claim that nurses providing medical care cannot be liable for failing to summon other necessary medical care. At least one other district court has rejected such an argument. See Washington v. Cnty. of San Diego, No. 02-CV-0143-LAB (JMA), 2006 WL 8455463, at *7 (S.D. Cal. Sept. 12, 2006) (denying motion for summary judgment to nurse defendants for alleged delay in summoning outside medical assistance and rejecting argument that nurses could not be held liable for failing to summon medical assistance because they were providing the medical care). Defendants do not meet their burden to show they are entitled to summary judgment based on their asserted immunity as set forth in California Government Code Section 845.6.

---

[4] A failure to summon medical care claim under California Government Code Section 845.6 is distinct from a claim that a practitioner failed to meet the appropriate standard of care. Nelson v. State of California, 139 Cal. App. 3d 72, 81 (4th Dist. 1982). Under a such a theory, defendants could be found liable if they knew or had reason to know that plaintiff was in need of immediate medical care other than what they were providing and failed to take reasonable action to summon it. See Cal. Gov't. Code § 845.6; Cal. Evid. Code § 669 (providing for a presumption of negligence if four elements are established, including that a person "violated a statute, ordinance, or regulation of a public entity").

**D. Causation**

Defendants argue plaintiff failed to present argument or evidence on the element of causation for the complaint's allegations that defendants' acts or omissions caused the bandage to get wet, thereby causing the infection. (ECF No. 52-1 at 18-19.) Defendants also argue causation for the state law medical malpractice claims requires a medical expert's opinion, which plaintiff has not presented.[5] (Id. at 19.)

Setting aside the complaint's allegations that defendants' acts or omissions caused the wound to get wet, thereby causing the infection, disputes of triable fact on the issue of causation exist as to defendants' acts or omissions in response to plaintiff's expressed concerns of pain, yellow drainage, blood, and that his surgical wound had dehisced. As determined, these material disputes of fact are capable of resolution through lay testimony. In light of the existing factual disputes, the court need not, at this time, resolve defendants' causation argument directed specifically to the complaint's allegations that defendants' acts or omissions caused the wound to get wet, thereby causing the infection.

**V. CONCLUSION AND RECOMMENDATION**

In accordance with the above, IT IS RECOMMENDED that defendants' motion for summary judgment be granted in part, as to plaintiff's claims against defendant Mutopo, and denied on all grounds asserted as to defendants Dacuycuy and Hortizuela.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven (7) days after service of the objections. The

[5] Defendants also argue their nursing expert has opined that the infection is likely to have been caused by trauma due to plaintiff's religious practice of kneeling in prayer five times daily. (ECF No. 52-1 at 18-19.) But plaintiff disputes this evidence and denies that he kneeled or attempted to kneel in prayer at any time while he was receiving post-operative care at CHCF. (ECF No. 56-2, ¶ 25.)

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: June 27, 2023

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

abdu0804.msj